COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Athey and Senior Judge Clements

UNPUBLISHED

TERESA MARIE HALL

v.      Record No. 0859-20-3

LYNCHBURG DEPARTMENT
  OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
DECEMBER 22, 2020

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Michael R. Doucette, Judge

(Herbert E. Taylor, III; Curtis L. Thornhill, Guardian *ad litem* for
appellant, on brief), for appellant.

(Susan L. Hartman, Assistant City Attorney; James A. Downey, Jr.,
Guardian *ad litem* for the minor children, on brief), for appellee.


Teresa Marie Hall (mother) appeals the order terminating her parental rights to four of her

children and approving the foster care goal of adoption. Mother argues that the circuit court erred in

finding that the evidence was sufficient to terminate her parental rights and that the Lynchburg

Department of Social Services (the Department) made reasonable efforts to provide her with

services to remedy the conditions that led the children to enter foster care. Mother also challenges

the circuit court's approval of the foster care goal of adoption. Upon reviewing the record and

briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily

affirm the decision of the circuit court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother is the biological mother to the four children who are the subject of this appeal, S.H., A.S., R.S., and S.S.[2] The Department had been involved with the family since 2010. The Department previously had provided numerous services for mental health and substance abuse.

In May 2018, mother was losing her housing and struggling mentally. Upon determining that she needed mental health treatment, mother contacted the Department for assistance. Mother agreed to place the children with family members while she was hospitalized, and the Department provided gift cards to the family members caring for the children.

During her hospitalization, mother reported to the staff that she used PCP, cocaine, and marijuana while she cared for the children. After mother's release from the hospital, the Department questioned mother about her drug use. A.S., R.S., and S.S. were home at the time, while S.H. was in school. Mother became "irate and rude" when the Department expressed concern about mother's drug use, her mental health, and her caretaking role for the children.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Mother has an older son who is not the subject of this appeal; the older son's paternal grandmother and father have custody of him. S.H.'s father was unknown, and Racceion Steelman is the biological father for A.S., R.S., and S.S. The Lynchburg Juvenile and Domestic Relations District Court terminated Steelman's parental rights and approved the foster care goal of adoption for A.S., R.S., and S.S.

Mother refused to submit to a drug screen. The Department advised mother that it was willing to work with her, but she needed to voluntarily place her children with relatives. Even though mother's relatives were present and ready to take the children, mother refused and threatened the social workers. She became very argumentative and threw an object at one of the social workers.[3] A police officer had to handcuff mother after she became "ballistic" and "totally out of control."

On May 25, 2018, the Department placed the children, who were between the ages of six months old and almost seven years old, in foster care. All four children were "significantly behind on all medical care," and A.S., R.S., and S.S. had not received any immunization shots.

The Department was aware that mother's mental health and substance abuse needed to be addressed. She had been diagnosed with schizoaffective disorder and bipolar disorder. She also admitted using marijuana and PCP. The Department referred mother to outpatient counseling, parent coaching services, a psychological evaluation, attachment assessment, and substance abuse assessment. The Department also required mother to submit to random drug screens and participate in supervised visitation.

Mother did not successfully complete the Department's requirements and was never at "a baseline of stability" for the Department to assess if additional services could have benefitted her. Mother had an extensive criminal history and was arrested for numerous drug and criminal charges while the children were in foster care. Mother never completed a substance abuse assessment despite being told to do so "multiple times." She also was not compliant with her medication. Mother, however, did complete a psychological evaluation with Dr. Anthony Wells and an attachment assessment with Don Wilhelm. Both Dr. Wells and Wilhelm recommended

_____

[3] Mother admitted to throwing the object but denied throwing it at the worker. Mother was convicted of "throwing that object."

that mother participate in counseling and medication management, as well as mental health skill building and parental support services.

When the children first entered foster care, mother was "too unstable mentally" to visit with the children. By September 2018, mother had stabilized, so the Department arranged for supervised visitation between the children and mother. At first, the visits were productive, and mother engaged and interacted with the children, but between February and March 2019, mother started testing positive for drugs and was "behaving erratically again." She had run out of her medication and refused to seek treatment at Horizon Behavioral Health because she did not trust Horizon. During the visits, mother was "extremely emotional" and acted "overly aggressive" toward the children, who found the visits to be "frightening" and "traumatizing." By April 2019, the Department suspended mother's visitations.

In May 2019, mother was hospitalized for suicidal thoughts. Immediately before her admission at the hospital, mother had "lost complete control" and reacted violently by throwing a chair that hit her counselor and getting into "an all out physical brawl" with a security guard. After her release from the hospital, mother resumed using drugs again to deal with her "profound pain, emotional distress." Mother later admitted to the Department that she "had done lots of drugs . . . whatever she could get her hands on . . . ."[4] In June 2019, mother stopped communicating with the Department.

On October 29, 2019, the JDR court terminated mother's parental rights and approved the foster care goal of adoption. Mother appealed the JDR court's rulings to the circuit court.

On May 28 and June 4, 2020, the parties appeared before the circuit court. The Department presented evidence that in the fall of 2019, the children had been placed with the paternal grandmother of A.S., R.S., and S.S. The social worker testified that the children were

---

[4] At trial, mother denied making this statement.

"doing really well in the placement" and continued to need "a tremendous amount of support and services." The children participated in counseling, and S.H. received medication management.

Mother testified that she supported the children's temporary placement with their paternal grandmother. Mother, however, did not want her parental rights terminated. Mother acknowledged that she was not able to care for the children at the time of the circuit court hearing because she did not have housing. Mother admitted that she had been charged "recently" with two counts of public intoxication and trespassing. Mother also admitted that she had used PCP a "few days" before the circuit court hearing and that she drank alcohol "a lot."

After hearing the evidence and argument, the circuit court found that mother had "a lengthy diagnosis of mental health issues" and "her use of prescribed medications has been sporadic at best." The circuit court also found that mother had "a lengthy history of substance abuse, doing the PCP, cocaine and marijuana, that she uses these drugs to self medicate, especially the PCP." The circuit court further found that the children were doing well with their paternal grandmother, but they needed "a great deal of services." The circuit court terminated mother's parental rights to the children under Code § 16.1-283(B) and (C)(2) and approved the foster care goal of adoption. This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty.

Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania

Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother challenges the circuit court's termination of her parental rights and contends that

termination was not in the children's best interests.[5]  Mother further asserts that the Department

failed to provide her with reasonable services, including "appropriate" substance abuse services,

psychiatric and medication management services, and visitation with the children.

The circuit court terminated mother's parental rights under Code § 16.1-283(B) and

(C)(2).  Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious
> and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in
> such neglect or abuse can be substantially corrected or eliminated
> so as to allow the child's safe return to his parent or parents within
> a reasonable period of time.  In making this determination, the
> court shall take into consideration the efforts made to rehabilitate
> the parent or parents by any public or private social, medical,
> mental health or other rehabilitative agencies prior to the child's
> initial placement in foster care.

Furthermore, the following is *prima facie* evidence for Code § 16.1-283(B)(2):

> a. The parent or parents have a mental or emotional illness or
> intellectual disability of such severity that there is no reasonable
> expectation that such parent will be able to undertake
> responsibility for the care needed by the child in accordance with
> his age and stage of development;
>
> b. The parent or parents have habitually abused or are addicted to
> intoxicating liquors, narcotics or other dangerous drugs to the
> extent that proper parental ability has been seriously impaired and
> the parent, without good cause, has not responded to or followed

---

[5] In the argument section of her brief, mother argues that the Department failed to consider relative placement before pursuing termination of mother's parental rights and that the circuit court's ruling "runs counter to Constitutional protections guarding the family from intrusion by local social service agencies and the court."  We find that mother waived these arguments because she did not include them as assignments of error.  See Fox v. Fox, 61 Va. App. 185, 202 (2012) ("Rule 5A:20(c) requires us to hold that this issue is waived because it is not part of appellant's assignment of error.").

through with recommended and available treatment which could
have improved the capacity for adequate parental functioning; or

c. The parent or parents, without good cause, have not responded
to or followed through with appropriate, available and reasonable
rehabilitative efforts on the part of social, medical, mental health or
other rehabilitative agencies designed to reduce, eliminate or
prevent the neglect or abuse of the child.

Id.

After hearing the evidence and argument, the circuit court found that "clear and

convincing proof has been given on all three of the *prima facie* factors . . . ." The circuit court

found that mother had a "lengthy history" of mental illness and substance abuse. Before the

children entered foster care, mother had contacted the Department for assistance when she

needed hospitalization for her mental health. While in the hospital, mother admitted to using

drugs. The children entered foster care after mother refused to take a drug test or sign a safety

plan allowing her children to stay with relatives. While the children were in foster care, mother

was hospitalized again for mental health treatment after having suicidal thoughts. Mother

reportedly used drugs to self-medicate and did not take regularly her prescribed medication.

Mother admitted to using PCP a few days before the circuit court hearing, and the circuit court

told mother, "If you were ever going to change your behavior, knowing you're in the mi[d]st of a

termination of parental rights, this would be the time not to use PCP."

The Department had been providing services to mother for years, but she did not follow

through with them. The circuit court held that "a lot" of mother's problems arose out of her

"opposition" to the mental health provider in Lynchburg and her refusal to work with them. The

circuit court explained to mother that "[s]ometimes you may not like the people you have to

work with . . . [but] you have to make it happen." Instead, the circuit court found that mother

just said, "no, no, no, only my way or no way." Then, after her second hospitalization in May

2019, mother stopped contacting the Department and her counselor. She used drugs and alcohol and did not take her prescribed medication.

The circuit court rejected mother's arguments that the Department's efforts and services had "fallen short" because "it's a two-way street and they can only go so far when all they're really coming up to is road blocks [sic]." "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Harrison v. Tazewell Cnty. Dep't of Soc. Servs., 42 Va. App. 149, 163 (2004) (quoting Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338 (1992)). The Department "is not required to force its services upon an unwilling or disinterested parent." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 323 (2013) (quoting Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243 (1982)); see also Logan, 13 Va. App. at 130. The evidence proved that mother was not cooperative with the Department's services.

Moreover, "Code § 16.1-283(B) requires only that the circuit court consider whether rehabilitation services, if any, have been provided to a parent. Nothing in Code § 16.1-283 or the larger statutory scheme requires that such services be provided in all cases as a prerequisite to termination under subsection B." Eaton v. Washington Cnty. Dep't of Soc. Servs., 66 Va. App. 317, 327-28 (2016) (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 268 (2005)). Nevertheless, the evidence proved that the Department provided numerous services to mother over the years, but she did not avail herself of those services.

The children, on the other hand, were doing well in foster care. The Department presented evidence that they continued to need services and were living with their paternal grandmother. The children had been in foster care for approximately two years, and mother acknowledged that she was not able to care for them at the time of the circuit court hearing. "It

is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett, 62 Va. App. at 322 (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).  Considering the totality of the evidence, the circuit court did not err in finding that it was in the children's best interests to terminate mother's parental rights and that the evidence was sufficient to support termination under Code § 16.1-283(B).[6]

With respect to mother's challenge of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of [her] appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms, 46 Va. App. at 265 n.3.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.  Rule 5A:27.

Affirmed.

---

[6] The circuit court also terminated mother's parental rights under Code § 16.1-283(C)(2). "When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cnty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection).  Because we find that the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(B), we, therefore, do not need to reach the question of whether mother's parental rights also should have been terminated under Code § 16.1-283(C)(2).